JUSTICE LEAPHART
dissenting:
I dissent. In my view, the trial court’s final decision in this matter was colored by the fact that the court impermissibly questioned Ahmed as to whether he was an illegal alien while living in New York. The court pursued this line of questioning despite Ahmed’s invocation of his 5th Amendment right not to incriminate himself. Although the court, in a post-trial order, sustained defense counsel’s objection to these questions and struck the testimony, the trial court’s findings of fact and conclusions of law contain references suggesting that the court did consider Ahmed’s testimony as to his immigration status. In Finding #15, the court noted that “Defendant was ‘out-of-status’ in the spring of 1990.” In Finding #17, the court stated:
An alien who marries a U.S. citizen may, upon petition from the citizen-spouse, be allowed to stay in the U.S. It was likely that the Defendant would have been permitted to remain in the U.S. if his citizen-spouse were to file an appropriate petition. Defendant had extra incentive to win J.F. back during the summer of 1990.
Clearly, despite the fact that testimony as to Ahmed’s immigration status was elicited in violation of his 5th Amendment rights, the court put much store by the fact that Ahmed was “out-of-status” with the INS. Furthermore, the court’s reasoning that Ahmed’s out-of-status situation gave him incentive to win J.F. back is tenuous at best. Agent Sprekelmeyer testified that there is no status granted or changed as a result of an alien’s marriage to a U.S. citizen. Rather, as a matter of grace, the Attorney General may allow out-of-status aliens to remain in the U.S. i/they are making application for adjustment of status. Although the Attorney General does not generally choose to deport out-of-status aliens married to U.S. citizens, “they are deportable during that period of time.” If validating his status with *217 the INS were Ahmed’s ultimate goal, it would be more logical to conclude that Ahmed would seek to cure his out-of-status situation by, as Agent Sprekelmeyer acknowledged, merely filing an application for reinstatement as a student. This would certainly be a quicker and more effective way to reinstate his status than pursuing a forced marriage with a U.S. citizen when marriage alone would not change his status.
I would also reverse due to the court’s allowing Lt. Cashell to testify, over objection, as to the contents of a phone conversation Cashell had with Ahmed’s attorney Mr. Gadye. Gadye placed a call to Cashell to discuss the case. In the context of discussing how to resolve the charges, Cashell testified that Gadye said he would advise Ahmed to surrender himself. This hearsay statement by defense counsel during the course of settlement discussions had no probative value. It was not an admission by Ahmed. It was merely a statement by Gadye as to what he intended to tell Ahmed. There was no evidence that he, in fact, passed this advice on to Ahmed. Ahmed was put in the position where he could not rebut this testimony without revealing privileged communications he had with his counsel. The hearsay had no probative value and yet was highly prejudicial to Ahmed.
The State argues that Gadye’s statement was not hearsay under Rule 801(d)(2)(C) and (D), M.R.Evid., which excludes from hearsay
(C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party’s agent or servant concerning a matter within the scope of the agency or employment, made during the existence of that relationship ....
Clearly, Rule 801 contemplates the admission of statements which reflect information or positions that the party (here, the defendant) has communicated to the agent and has authorized the agent to discuss. It does not contemplate the admission of information or advice which is flowing the other direction. That is, from counsel to client (the defendant). It is one thing to hold Ahmed responsible for positions that originate with him or that he has authorized. It is quite another to hold him to positions taken by another when the position may not have even been communicated to or discussed with Ahmed. What someone intended to tell Ahmed is totally irrelevant to what Ahmed in fact knew or contemplated. The court’s reliance on this hearsay testimony in its findings indicates that it was a significant, and, I submit, improper, factor in the court’s analysis.
For the above reasons, I would reverse the conviction.